21

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                Plaintiff,

vs.

OLALERE OLAYEMI AFOLAYAN,

                Defendant.

Case:2:19-cr-20116
Judge: Parker, Linda V.
MJ: Stafford, Elizabeth A.
Filed: 02-28-2019 At 04:18 PM
INDI USA V. SEALED MATTER (DA)

Offenses:
Ct. 1: Bank/Wire Fraud Conspiracy
Cts. 2-12: Wire Fraud
Cts. 13-14: Aggravated ID Theft
Ct. 15: Access Device Conspiracy
Ct. 16: Money Laundering

Violations:
Ct. 1: 18 U.S.C. § 1349
Cts. 2-12: 18 U.S.C. §§ 1343, 2
Cts. 13-14: 18 U.S.C. §§ 1028A, 2
Ct. 15: 18 U.S.C. § 1029(b)(2)
Ct. 16: 18 U.S.C. § 1956(h)

---

### INDICTMENT

THE GRAND JURY CHARGES THAT:

### GENERAL ALEGATIONS

At all times relevant to this Indictment, unless otherwise indicated:

    1.    Defendant OLALERE OLAYEMI AFOLAYAN ("AFOLAYAN")

was a Nigerian national residing outside the United States.

    2.    Beginning at a date unknown, but no later than in or around August

2014, and continuing through at least in or around September 2017, AFOLAYAN conspired and agreed with others, both known and unknown to the Grand Jury, to unlawfully enrich themselves by participating in an array of cyber-enabled financial frauds, including business email compromise scams. The scams perpetrated by AFOLAYAN and others victimized unsuspecting individuals and businesses throughout the United States and the world, including victims within the Eastern District of Michigan, and attempted to cause more than a million dollars in losses.

## Relevant Terms and Definitions

3.     A "domain name" was a simple, easy-to-remember way to identify computers on the Internet, using a series of characters (e.g., letters, numbers, or other characters) that correspond with particular Internet Protocol ("IP") address(es).   An individual or business may purchase or register a domain name to host websites, or personal or business email addresses.

4.     "Email header information" specified particular routing information of an email message, such as its sender, recipient, date, subject, Internet protocol (IP) addresses of the sender and email servers, and a reply-to email address.

5.     "Email spoofing" was a fraudulent technique of forging email header information, such as the identity of the sender, so that an email appears to have been sent from a trusted source that is different from the actual sender.

2

6. "Personal Identification Information" ("PII") included—but was not limited to—name, date of birth, address, social security number, bank account numbers, bank routing numbers, credit card numbers, and any other name or number that may be used alone or in conjunction with any other information to identify a specific individual.

Business Email Compromise ("BEC") Scams

7. In the period from in or around August 2014, and continuing through in or around September 2017, AFOLAYAN and others caused fraudulent emails to be sent to employees of United States businesses and banks directing the unauthorized transfer of funds to specified bank accounts. The emails purported to be from trusted individuals, such as supervisors at victim businesses, but were actually unauthorized wire transfer instructions from AFOLAYAN and other co-conspirators. AFOLAYAN and others used a number of means to impersonate employees at the victim businesses in fraudulent emails, including gaining unauthorized access to email accounts, using email accounts that resembled legitimate email accounts, and email spoofing. After victims complied with fraudulent wire transfer instructions, the transferred funds were quickly withdrawn or moved into different bank accounts.

3

8.    AFOLAYAN and others carried out the BEC scams by, among other means, (i) sharing emails from compromised email accounts, (ii) trafficking in the PII of victims, (iii) drafting scripts for requesting fraudulent wire transfers from victims, (iv) spoofing email header information to correspond with employees at victim businesses and banks to advance the fraud, (v) completing fraudulent wire transfer request forms and submitting them to victim banks, and (vi) coordinating and directing the activities of individuals in the United States acting at their direction.

9.    AFOLAYAN and others targeted individuals and businesses throughout the United States, including, but not limited to, a real estate business in the Eastern District of Michigan that was named Larc Properties, Inc. ("Larc Properties") in or around 2014, and advertising, construction, wine, entertainment, and background check companies from other parts of the United States.

10.    The BEC scams perpetrated by AFOLAYAN also victimized a variety of financial institutions throughout the United States, including, but not limited to, Flagstar Bank, a financial institution headquartered in the Eastern District of Michigan, as well as Bank of America Corporation ("Bank of America") and Wells Fargo Company ("Wells Fargo"). The deposits of all these financial institutions were insured by the Federal Deposit Insurance Corporation ("FDIC").

4

## BEC Scam to Defraud Larc Properties, L.T. and Flagstar Bank

11. On or about August 21, 2014, and continuing through in or about January 2015, AFOLAYAN and others devised and participated in a BEC scam to defraud the Chief Executive Officer of Larc Properties, L.T., and Flagstar Bank, of hundreds of thousands of dollars. As part of the scam, AFOLAYAN and others gained unauthorized access to L.T.'s business email account at the domain name larcproperties.com, and created lookalike email accounts using the domain name larcproperties.net that closely resembled the legitimate email accounts of L.T. and C.C., another Larc Properties employee, among others. AFOLAYAN and others then used the newly-created lookalike email accounts to impersonate L.T. and C.C. in emails sent to Flagstar Bank employees directing the execution of four unauthorized wire transfers of money from L.T.'s bank account with Flagstar Bank to foreign bank accounts specified by the conspirators.

12. The conspirators' fraudulent emails caused Flagstar Bank to transfer hundreds of thousands of dollars to a foreign bank account on or about August 25, 2014, and tens of thousands of dollars' worth of British pound sterling (GBP)—the official currency of the United Kingdom—to another foreign bank account on or about September 2, 2014.

5

13. At or near the times that Flagstar Bank received wire transfer instructions from the fraudulent email accounts, AFOLAYAN and others used an online messaging service to discuss the planning, execution, and status of the BEC scam, including planning how to create a lookalike domain to host the fraudulent email accounts, submit unauthorized wire transfer instructions to Flagstar Bank, and establish bank accounts(s) needed to receive fraudulent transfers from Flagstar Bank. AFOLAYAN and others also exchanged draft scripts to use in correspondence with employees of Flagstar Bank.

<u>BEC Scams to Defraud Additional Victims</u>

14. AFOLAYAN and others also devised and participated in a number of additional BEC scams to defraud individuals, businesses and banks across the United States, using the technique of email spoofing. As part of the scheme, AFOLAYAN and others often caused emails to be sent to employees at victim businesses directing them to initiate unauthorized wire transfers from bank accounts controlled by the victim to bank accounts specified by AFOLAYAN and his co-conspirators. To deceive the employees, the conspirators posed as supervisors at the victim businesses and forged email header information to make the emails appear as if they were sent from the supervisors' email addresses when, in fact, they were not. The conspirators'

fraudulent wire transfer instructions caused some victims to initiate unauthorized wire transfers through banks.

15.   As part of the scheme:

a.   On or about September 10, 2015, AFOLAYAN and others sent emails to one or more employees of a construction company headquartered in Seattle, Washington directing the unauthorized wire transfer of approximately $29,709.

b.   On or about September 18, 2015, AFOLAYAN and others sent emails to one or more employees of a production and talent management company headquartered in New York, New York directing the unauthorized wire transfer of approximately $38,400 from a victim bank account with Bank of America.

c.   On or about September 21, 2015, AFOLAYAN and others sent emails to one or more employees of a wine store headquartered in San Rafael, California directing the unauthorized wire transfer of approximately $32,900 from a victim bank account with Bank of America.

d.   In or about September and October 2015, AFOLAYAN and others sent emails to one or more employees of an entertainment company headquartered in Monterey, California directing unauthorized wire transfers totaling approximately $127,450 from a victim bank account with Wells Fargo.

7

e.     On or about November 24, 2015, AFOLAYAN and others sent emails to one or more employees of an online background check company headquartered in San Diego, California, directing an unauthorized wire transfer of approximately $150,000 from a victim bank account with Wells Fargo.

## Count 1

### Conspiracy to Commit Wire Fraud and Bank Fraud
### 18 U.S.C. § 1349

16.     The allegations in paragraphs 1 through 15 are re-alleged and incorporated as if fully set forth here.

17.     From at least in or around August 2014, and continuing through at least in or around September 2017, in the Eastern District of Michigan and elsewhere, the defendant, AFOLAYAN, and others known and unknown to the Grand Jury, unlawfully, did knowingly and intentionally, agree and conspire to:

a.     devise and execute and attempt to execute a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations, and promises, and for the purposes of executing and attempting to execute this scheme and artifice to defraud, knowingly cause to be transmitted in interstate and foreign commerce, by means of wire communication, certain signs, signals, and sounds, in violation of Title 18, United States Code, Section 1343; and

8

b.      devise and execute and attempt to execute a scheme and artifice

to obtain any of the moneys, funds, credits, assets, securities, and other property

owned by, and under the custody and control of, a financial institution, by means of

false and fraudulent pretenses, representations, and promises, in violation of Title

18, United States Code, Section 1344.

## OBJECT OF THE CONSPIRACY

18.    It was an object of the conspiracy for AFOLAYAN and others to

unlawfully enrich themselves by conducting multiple complex financial fraud scams

via the Internet, including BEC scams, through gaining unauthorized access to email

accounts, email spoofing, and falsely assuming the identities of real and fictitious

people, all in an attempt to get banks and companies to process fraudulent wire

transfer requests. A further object was to transfer the proceeds of the financial fraud

scams to co-conspirators through intermediaries.

## MANNER AND MEANS

19.    It was part of the conspiracy that defendant AFOLAYAN, and others,

devised, executed, and facilitated multiple cyber-enabled financial fraud scams,

including BEC scams, against individuals, businesses and banks in the United States.

20.    It was further part of the conspiracy that defendant AFOLAYAN, and

others, attempted to fraudulently obtain sensitive information, such as user names,

9

passwords, and PII, of unsuspecting individuals, businesses, and banks, by posing as a trustworthy source in electronic communications ("phishing emails").

21.    It was further part of the conspiracy that defendant AFOLAYAN, and others, gained unauthorized access to email and other online accounts, monitored the accounts' activities, and collected PII that could be used to conduct other cyber-enabled financial fraud schemes.

22.    It was further part of the conspiracy that defendant AFOLAYAN, and others, concealed their identity and criminal activity through a number of means, including by using email spoofing services, aliases, online nicknames, fake email and online accounts, stolen identities, and the PII of others.

23.    It was further part of the conspiracy that defendant AFOLAYAN, and others, would fraudulently assume the identities of victims to execute and facilitate cyber-enabled financial fraud schemes through a number of means, including by sending emails from online accounts that either resembled the victims' online accounts or were made to appear like the victims' online accounts through email spoofing.

24.    It was further part of the conspiracy that defendant AFOLAYAN and his co-conspirators communicated through a number of means, including email,

online messaging services, and telephone, concerning the planning and execution of schemes to defraud potential victims in the United States.

25. It was further part of the conspiracy that defendant AFOLAYAN and others created email and other online accounts used to facilitate cyber-enabled financial fraud, including registering domains, creating email accounts, subscribing to background check services, and other computer-related services.

26. It was further part of the conspiracy that defendant AFOLAYAN, and others, opened and caused others to open bank and other financial accounts for the purpose of receiving fraudulently obtained funds, and transmitting fraudulently obtained funds to other accounts under their control.

27. It was further part of the conspiracy that defendant AFOLAYAN, and others, concealed their identities and criminal activity by transferring the proceeds of their financial fraud schemes through accounts controlled by intermediaries in the United States.

All in violation of Title 18, United States Code, Section 1349.

11

## Counts 2-12
## Wire Fraud
## 18 U.S.C. §§ 1343, 2

28. The allegations in paragraphs 1 through 15 and 19 through 27 are re-alleged and incorporated as if fully set forth here.

29. Beginning on a date unknown, but no later than on or about August 21, 2014, and continuing thereafter until at least September 23, 2014, in the Eastern District of Michigan and elsewhere, the defendant AFOLAYAN, and others, devised and intended to devise a scheme and artifice to defraud, namely the scheme described in Count 1, and to obtain money and property from L.T. and Flagstar Bank, by means of materially false and fraudulent pretenses, representations and promises.

30. On or about each of the dates set forth below, for the purpose of executing, and aiding and abetting, the scheme described above, and attempting to do so, defendant AFOLAYAN caused to be transmitted by means of wire communication in interstate and foreign commerce to and from the Eastern District of Michigan, the signals and sounds described below for each count, each transmission constituting a separate count:

12

| Count | Approximate Date | Transmission |
|-------|------------------|--------------|
| 2 | August 25, 2014 | Fraudulent email from the co-conspirators' lookalike account for C.C. (@larcproperties.net) ("the C.C. lookalike account") to a Flagstar Bank employee in the Eastern District of Michigan under the subject line "Balances" requesting balances for L.T.'s bank accounts with Flagstar Bank, and assistance with wire transferring money out of those accounts. |
| 3 | August 25, 2014 | Fraudulent email from the C.C. lookalike account to a Flagstar Bank employee in the Eastern District of Michigan under the subject line "Transfer" requesting the transfer of money from one of L.T.'s bank accounts with Flagstar Bank ("L.T.'s bank account") to a foreign bank account. |
| 4 | August 25, 2014 | Fraudulent email from the C.C. lookalike account to a Flagstar Bank employee in the Eastern District of Michigan under the subject line "Re: Transfer" directing a wire transfer of approximately $279,000 from L.T.'s bank account to a foreign bank account. |
| 5 | August 25, 2014 | Fraudulent email from the C.C. lookalike account to a Flagstar Bank employee in the Eastern District of Michigan under the subject line "Re: Transfer" that attached a form requesting a wire transfer of approximately $279,000 from L.T.'s bank account to a foreign bank account. |
| 6 | August 25, 2014 | Interstate wire transfer in the approximate amount of $279,000 from L.T.'s bank account to a foreign bank account that was initiated by Flagstar Bank in the Eastern District of Michigan. |
| 7 | September 1, 2014 | Fraudulent email from the C.C. lookalike account to a Flagstar Bank employee in the Eastern District of Michigan under the subject line "Re: Transfer" directing a wire transfer of approximately 100,000 GBP from L.T.'s bank account to a foreign bank account. |

| Count | Approximate Date | Transmission |
|---|---|---|
| 8 | September 2, 2014 | Fraudulent email from the C.C. lookalike account to a Flagstar Bank employee in the Eastern District of Michigan under the subject line "Re: Meeting" directing a wire transfer of approximately 50,000 GBP from L.T.'s bank account to a foreign bank account. |
| 9 | September 2, 2014 | Fraudulent email from the C.C. lookalike account to a Flagstar Bank employee in the Eastern District of Michigan under the subject line "Re: Transfer" that attached a form requesting a wire transfer of approximately 50,000 GBP from L.T.'s bank account to a foreign bank account. |
| 10 | September 2, 2014 | Interstate wire transfer in the approximate amount of 50,000 GBP from L.T.'s bank account to a foreign bank account that was initiated by Flagstar Bank in the Eastern District of Michigan. |
| 11 | September 23, 2014 | Fraudulent email from the C.C. lookalike account to a Flagstar Bank employee in the Eastern District of Michigan under the subject line "Re: Concerning Treatment" requesting the wire transfer of approximately 90,000 GBP from L.T.'s bank account to a foreign bank account. |
| 12 | September 23, 2014 | Fraudulent email from the C.C. lookalike account to a Flagstar Bank employee in the Eastern District of Michigan under the subject line "Re: Concerning Treatment" requesting the form needed to complete the wire transfer of approximately 90,000 GBP from L.T.'s bank account to a foreign bank account. |

All in violation of Title 18, United State Code, Sections 1343 and 2.

14

## Counts 13-14

### Aggravated Identity Theft
### 18 U.S.C. §§ 1028A(a)-(b), 2

31.     The allegations in paragraphs 1 through 15 and 19 through 27 are re-alleged and incorporated as if fully set forth here.

32.     On or about each of the dates set forth below, in the Eastern District of Michigan and elsewhere, the defendant AFOLAYAN, did knowingly transfer, possess, and use, without lawful authority, a means of identification of another person, as defined in Title 18, United States Code, Section 1028(d)(7), specifically, the name, bank account number, and signature of L.T., during and in relation to a violation of Title 18, United States Code, Section 1343, knowing that the means of identification belonged to another actual person:

| Count | Approximate Date | Transmission |
|-------|------------------|--------------|
| 13 | August 25, 2014 | AFOLAYAN transferred, possessed, and used L.T.'s name, bank account number, and signature in a wire transfer request form attached to a fraudulent email sent from the C.C. lookalike account to a Flagstar Bank employee in the Eastern District of Michigan, as charged in Count 5. |
| 14 | September 2, 2014 | AFOLAYAN transferred, possessed, and used L.T.'s name, bank account number, and signature in a wire transfer request form attached to a fraudulent email sent from the C.C. lookalike account to a Flagstar Bank employee in the Eastern District of Michigan, as charged in Count 9. |

All in violation of Title 18, United States Code, Sections 1028A(a)-(b), and

2.

## Count 15

### Conspiracy to Commit Access Device Fraud
### 18 U.S.C. §§ 1029(b)(2), (c)(1)(A)(i)

33.    The allegations in paragraphs 1 through 15 and 19 through 27 are re-alleged and incorporated as if fully set forth here.

### OFFENSE

34.    From at least August 2014, and continuing through at least September 2017, in the Eastern District of Michigan and elsewhere, the defendant, AFOLAYAN, and others known and unknown to the Grand Jury, unlawfully, willfully, and knowingly agreed, combined, and conspired to:

a.    knowingly and with intent to defraud, traffic in and use one and more unauthorized access devices, as defined in Title 18, United States Code, Section 1029(e)(3), during any one-year period of the conspiracy, including on or about August 25, 2014, through on or about August 24, 2015, and by such conduct obtain anything of value aggregating $1,000 or more during that period, in violation of Title 18, United States Code, Section 1029(a)(2); and

b.    knowingly and with intent to defraud possess fifteen or more unauthorized access devices, as defined in Title 18, United States Code, Section

16

1029(e)(3), said possession affecting interstate and foreign commerce, in violation of Title 18, United States Code, Section 1029(a)(3).

## MANNER AND MEANS

35.   To carry out the conspiracy and to effect its unlawful objects, the defendant AFOLAYAN and others engaged in the manner and means described in Count 1 of this Indictment, among others.

## OVERT ACTS

36.   In furtherance of the conspiracy, and to achieve the objects thereof, the defendant AFOLAYAN and others did commit and cause to be committed a number of overt acts, including the wire transfers alleged in Counts 5 and 9 of this Indictment.

All in violation of Title 18, United States Code, Sections 1029(b)(2) and (c)(1)(A)(i).

## **Count 16**

### **Money Laundering Conspiracy**
### **18 U.S.C. § 1956(h)**

37.   The allegations in paragraphs 1 through 15 and 19 through 27 are re-alleged and incorporated as if fully set forth here.

38.   From at least August 2014, and continuing through at least September 2017, the defendant, AFOLAYAN, and others known and unknown to the Grand

17

Jury, unlawfully, willfully, and knowingly agreed, combined, and conspired with each other to commit offenses against the United States in violation of Title 18, United States Code, Section 1956(a)(1), to wit, knowingly conducting and attempting to conduct, financial transactions affecting interstate and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is violations of Title 18, United States Code, Sections 1343 and 1349, knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of the specified unlawful activity in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i). The unlawful objectives of the conspiracy were accomplished through a number of manner and means, including those describe in Count 1 of this Indictment, among others.

All in violation of Title 18, United States Code, Section 1956(h).

## FORFEITURE ALLEGATION

### 18 U.S.C. §§ 981(a)(1)(C), 982(a)(1), 982(a)(2), & 1029(c)(1)(C); 28 U.S.C. § 2461

39.    The factual allegations in paragraphs 1 through 30, and 33 through 38, are re-alleged and incorporated as if fully set forth here for the purpose of noticing forfeiture pursuant to Title 18, United States Code, Sections 981(a)(1)(C), 982(a)(1), 982(a)(2), 1029(c)(1)(C), Title 28, United States Code, Section 2461, and Rule

32.2(a) of the Federal Rules of Criminal Procedure.

40.     Upon conviction of the offenses in violation of Counts 1-12, and 15-16, of this Indictment, defendant AFOLAYAN shall forfeit to the United States of America the following:

    a.  For Counts 1-12, pursuant to 18 U.S.C. § 981(a)(1)(C) together with 28 U.S.C. § 2461(c), and 18 U.S.C. § 982(a)(2)(B), any property, real or personal, constituting, or derived from, proceeds obtained directly or indirectly as a result of such offense; and

    b.  For Count 15, pursuant to 18 U.S.C. § 1029(c)(1)(C), any personal property that was used or intended to commit the offense; and

    c.  For Count 16, pursuant to 18 U.S.C. § 982(a)(1), any property, real or personal, involved in, or any property traceable to, a violation of 18 U.S.C. § 1956(h).

41.     Pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b), the defendant AFOLAYAN shall forfeit substitute property, up to the value of the forfeitable property, or any portion thereof, if by any act or omission of the defendant the forfeitable property:

    a.  cannot be located upon the exercise of due diligence;

    b.  has been transferred or sold to or deposited with, a third person;

c. has been placed beyond the jurisdiction of the Court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be

subdivided without difficulty.

*THIS IS A TRUE BILL.*

*s/Grand Jury Foreperson*
Grand Jury Foreperson

MATTHEW SCHNEIDER
United States Attorney

*s/ John K. Neal*
JOHN K. NEAL
Chief, White Collar Crime Unit

*s/Aarash A. Haghighat*
AARASH A. HAGHIGHAT
Trial Attorney
Computer Crime and Intellectual
Property Section

*s/ Patrick E. Corbett*
PATRICK E. CORBETT P41182
Assistant United States Attorney
White Collar Crimes Unit
(313) 226-9703
patrick.corbett@usdoj.gov

Dated: 2/28/2019

20

| United States District Court<br>Eastern District of Michigan | **Criminal Case Cov** | Case:2:19-cr-20116<br>Judge: Parker, Linda V.<br>MJ: Stafford, Elizabeth A.<br>Filed: 02-28-2019 At 04:18 PM<br>INDI USA V. SEALED MATTER (DA) |
|---|---|---|

NOTE: It is the responsibility of the Assistant U.S. Attorney signing this form to comple~ ~~~~~~~~~~

| **Companion Case Information** | Companion Case Number: |
|---|---|
| This may be a companion case based upon LCrR 57.10 (b)(4)[1]: | Judge Assigned: |
| ☐ Yes    ☒ No | AUSA's Initials: *P.E.C.* |

**Case Title:** USA v.  OLALERE OLAYEMI AFOLAYAN

**County where offense occurred :**  Oakland County and elsewhere

**Check One:** ✓  ☒ **Felony**        ☐ **Misdemeanor**        ☐ **Petty**

_____Indictment/_____Information --- **no** prior complaint.
_✓_Indictment/_____Information --- based upon prior complaint [Case number: 17-mj-30679        ]
_____Indictment/_____Information --- based upon LCrR 57.10 (d) *[Complete Superseding section below]*.

## Superseding Case Information

**Superseding to Case No:** _____        **Judge:** _____

☐ Corrects errors; no additional charges or defendants.
☐ Involves, for plea purposes, different charges or adds counts.
☐ Embraces same subject matter but adds the additional defendants or charges below:

| **Defendant name** | **Charges** | **Prior Complaint (if applicable)** |
|---|---|---|

**Please take notice that the below listed Assistant United States Attorney is the attorney of record for the above captioned case.**

✓  February 28, 2019
Date

Patrick E. Corbett
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI  48226-3277
Phone: (313) 226-9703
Fax:   (313) 226-2873
E-Mail address: Patrick.corbett@usdoj.gov
Attorney Bar #:  P41182

[1] Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, or (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.