UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

                                Case No. 19-cr-20116

v.                               Honorable Linda V. Parker

OLALERE OLAYEMI AFOLAYAN,

        Defendant.

_____/

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS INDICTMENT (ECF No. 21)**

Defendant Olalere Afolayan has been indicted on the following counts: conspiracy to commit wire fraud and bank fraud (count 1); wire fraud (counts 2-12); aggravated identity theft (counts 13-14); conspiracy to commit access device fraud (count 15); and conspiracy to commit money laundering (count 16). (*See* ECF No. 1, PageID.1.) On January 15, 2026, Defendant filed a motion to dismiss the indictment for an alleged violation of his Sixth Amendment right to a speedy trial. (ECF No. 21.) The motion is fully briefed. (ECF Nos. 25 & 30.) On April 15, 2026, the parties appeared before the Court to present oral arguments on the motion. For the reasons that follow, the Court **GRANTS** Defendant's motion.

## I.      FACTUAL BACKGROUND

Between August 21, 2014, and September 23, 2014, an individual attempted to wire approximately $677,970 through four separate wire transfer requests. (Case No. 2:17-mj-30679, ECF No. 4, PageID.102.)  Two of those requests were processed, which led to two unauthorized transfers totaling $364,000.  (*Id.* at PageID.102-03.)  The bank notified the FBI, and it began investigating Defendant Afolayan.  (ECF No. 25, PageID.237.)  The investigation revealed that Defendant was likely the responsible party.  *Id.*

Defendant is a Nigerian national.  (ECF No. 23, PageID.144.)  In October 2017, the FBI learned that Defendant made plans to travel to Florida.  (ECF No. 25, PageID.238.)  On December 21, 2017, the Government issued a criminal complaint and an amended criminal complaint so that Defendant could be apprehended.  *Id.*  The Government also issued a 2017 Affidavit in support of the criminal complaint.  (ECF No. 23, PageID.143.)  Defendant canceled his 2017 trip to Florida and remained in Nigeria.  (ECF No. 23, PageID.145.)

The 2017 Affidavit describes Defendant as a "Nigerian national" and cites Afolayan's four visa applications (2013, 2014, 2016, and 2017), as sources of information.  (Case No. 2:17-mj-30679, ECF No. 4, PageID.121-22; 124.)  Defendant's 2017 application also includes his home address, business address, and family members.  (ECF No. 23-4, PageID.194-96; 198.)

In 2018, the FBI learned that Defendant planned to travel to Romania. The FBI sent a request to Romania and asked to be notified when he arrived. (ECF No. 25-2, PageID.256.) The Romanian Government did not respond until Defendant left the country. (ECF No. 25, PageID.238; ECF No. 25-3, PageID.260.)

In February 2019, the Government filed an indictment against Defendant. On September 24, 2019, the Government obtained an INTERPOL Wanted Person Diffusion, and sent notices to fourteen countries, excluding Nigeria. (ECF No. 21-6, PageID.120.) Defendant asserts that he did not have any connection to most of the selected countries, and that he had only traveled to four out of the fourteen countries listed. (ECF No. 23, PageID.146.) The Government argues that it would have been futile to add Nigeria to the list because "extradition from Nigeria is time consuming, challenging, and almost always unsuccessful." (ECF No. 27, PageID.319.)

In March 2020, the Government believed that Defendant's travel would be impeded by the COVID-19 pandemic. (ECF No. 27, PageID.319.) The Government maintained the diffusion notice so that Afolayan could be arrested if he traveled to one of the selected countries. *Id.* From this period to July 2023, the Government did not make any new or concrete efforts to apprehend Defendant. (*See id.* at PageID.319-20.)

In July 2023, Defendant applied for a visa to visit Florida.  The FBI worked to have his visa approved so that he could be arrested upon arrival.  Defendant did not make the trip.[1]  (ECF No. 25, PageID.241.)

The Government began considering extradition in early 2024.  (*Id.* at PageID.241.)  In November 2024, the Government renewed the diffusion.[2]  (*Id.* at PageID.242).  On January 7, 2025, Defendant was arrested on the diffusion when he traveled to Frankfurt, Germany.  *Id.*  After extradition from Germany, Defendant was brought to the U.S. and had his initial appearance on August 22, 2025.  *Id.*

## II.    APPLICABLE LAW AND ANALYSIS

The Sixth Amendment provides that, in all criminal prosecutions, "the accused shall enjoy the right to a speedy and public trial."  U.S. Const. Amend VI. This guarantee protects "at least three basic demands of criminal justice—to prevent undue and oppressive incarceration prior to trial; to minimize anxiety and concern accompanying public accusation; and to limit the possibility that delay will impair the ability of an accused to defend himself."  *Smith v. Hooey*, 393 U.S. 374, 377-78 (1969).  In *Barker v. Wingo*, the Supreme Court adopted a balancing test for determining whether a defendant has been denied a speedy trial in violation

---

[1] Around this time, the Government alleges that the Office of Internal Affairs informed the case team that extradition was unlikely.

[2] The Government also alleges that in October 2024, it learned of a backlog of extraditions pending in Nigeria.

of the Sixth Amendment.  407 U.S. 514 (1972).  *Barker* requires this Court to balance the following four factors: (1) the length of the delay, (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant. *Barker*, 407 U.S. at 530.

The Government does not dispute that Defendant Afolayan has asserted his right to a speedy trial.  However, it argues that the other factors weigh in its favor. Regarding the other factors, the Government suggests that (1) courts have found no Sixth Amendment violation in cases with delays even longer than Afolayan's;[3] (2) the Government diligently sought Afolayan's arrest; and (3) Afolayan has not been prejudiced by the delay.

Conversely, Defendant Afolayan argues that the time delay between the date of his indictment and the date of his arrest proves that his Sixth Amendment right to a speedy trial was violated.  Defendant argues that the delay was solely attributable to the Government and was caused because it failed to exercise reasonable diligence.  He also asserts that he lived openly in Nigeria for nearly the entire period between his initial charge in 2017 and his arrest in 2025.

---

[3] The Government cited a Sixth Circuit case, *United States v. Sutton*, to support an argument that the Court has found no Sixth Amendment violation even where a 10-year delay was at issue. (ECF No. 25, PageID.245.) This is slightly misleading, because the Court in *Sutton* actually found that the length of the delay actually weighed against the Government.  862 F.3d 547, 559 (6th Cir. 2017). Additionally, the Government in *Sutton* did not dispute that the length of the delay weighed against it.  *Id.*  The Court ultimately concluded that no violation occurred because the length of the delay was the only factor that clearly weighed in the defendant's favor.  *Id.* at 559-62.

Importantly, Defendant also notes that the Government knew that he was a Nigerian national as early as 2017, that he went to the US Embassy on several occasions to submit visa applications, and that the Government had possession of personal information and addresses.  Afolayan cites U.S. Supreme Court case *Doggett v. United States*, to support an argument that he was prejudiced by the delay.  *Doggett v. United States*, 505 U.S. 647, 657 (1992) (noting that "when the presumption of prejudice, albeit unspecified, is neither extenuated . . . nor persuasively rebutted, defendant is entitled to relief.")

The Court will address these arguments and each *Barker* factor in turn.

### A. Length of the Delay

The first *Barker* factor serves two functions.  Its first role is as a "threshold requirement."  *United States v. Schreane*, 331 F.3d 548, 553 (6th Cir. 2003).  Therefore, "to trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay."  *Doggett*, 505 U.S. at 651-52.  A one-year delay is presumptively prejudicial and triggers an analysis of the remaining *Barker* factors.

Defendant undoubtedly experienced an unusually long delay.  The Government also concedes that the "the delay here is sufficient to trigger the four-factor *Barker* inquiry."  (ECF No. 25, PageID.244.)  Defendant was arrested 69

months after the grand jury returned his indictment and 85 months after he was

formally charged in a criminal complaint. [4]   (ECF No. 21, PageID.74.)

Accordingly, the length of the delay weighs against the Government and triggers a

consideration of the remaining three factors.

### B. Reason for the Delay

In assessing the second factor, the reason for the delay, courts consider who

is most at fault—the government or the defendant." *Brown v. Romanowski*, 845

F.3d 703, 714 (6th Cir. 2017).  The weight of this factor varies depending on the

provided justification.  *Barker*, 407 U.S. at 530.  First, the Government may

"deliberate[ly] attempt to delay the trial in order to hamper the defense." *Id.* at

531.  This type of delay is to "be weighted heavily against the government." *Id.*

Negligence and unexplained delays weigh less heavily, but remain relevant, "since

the ultimate responsibility for such circumstances belongs to the government rather

than with the defendant." *Romanowski*, 845 F.3d at. 714 (quoting *Schreane*, 331

F.3d at 554) (cleaned up).

Often, trials are delayed for various reasons.  Therefore, *Barker* does not

require courts to "search for a blameless party." *Wilson v. Mitchell*, 250 F.3d 388,

395 (6th Cir. 2001).  Instead, the second factor asks courts to determine "whether

---

[4] The Government obtained a criminal complaint on December 21, 2017. (ECF No. 25, PageID.238)  Defendant was indicted by a grand jury on February 28, 2019. (*Id.* at 239.)

the government or the criminal defendant is more to blame for [the] delay."

*Doggett*, 505 U.S. at 651.

Here, the reason for the delay is solely attributable to the Government. According to the Government, the delay was due to its fear that extradition efforts would be unsuccessful and that the Nigerian Government would not provide meaningful assistance. To support this theory, the Government asserts that extradition from Nigeria "is time consuming, challenging, and almost always unsuccessful." (ECF No. 27, PageID.319.)

This explanation, however, ignores a multi-year block between 2020 and 2023 during which the Government mishandled a clear opportunity to apprehend the Defendant. The Government knew—or should have known— through information contained in Defendant's visa documents that he was likely residing in Nigeria. Specifically, those documents show that he is a Nigerian national, that he visited the US Embassy in Nigeria on several occasions during the relevant period, and that his most recent visa application listed a home address in Abuja, Nigeria. Instead of starting formal extradition proceedings, the Government used a diffusion notice and sent it only to countries where the Defendant had no real ties.

The Government, in its response brief, acknowledged that "the COVID-19 pandemic halted most international travel, including [Defendant's]. (ECF No. 25, PageID.240.) This acknowledgment effectively concedes that the diffusion notice

was ineffective during the pandemic.  The Government could have used that period to its advantage and pursued extradition.  Even at this time, however, the Government had already exceeded the one-year "presumptive prejudice" threshold.

The nearly six-year gap between the indictment and Defendant's arrest can only be attributed to the Government's failure to exercise reasonable diligence in locating him.  Accordingly, the Court finds that the Government is solely responsible for the delay and that the reason for the delay weighs in Defendant's favor.

### C. Asserted Sixth Amendment Right

*Barker's* third factor requires consideration of "the defendant's assertion of or failure to assert his right to a speedy trial." *Barker*, 407 U.S. at 528.  A "defendant's assertion of his speedy trial right ... is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." *Barker*, 407 U.S. at 531-32.  The Government, in its response brief, noted that it "does not contest that [Defendant] timely asserted his right to a speedy trial." (ECF No. 25, PageID.250.)  And importantly, Defendant asserts that he only learned of the charges against him after he was arrested in January 2025.  (ECF No. 21, PageID.21.)  The Government does not offer any evidence to the contrary. Accordingly, it follows that Defendant's failure to assert his Sixth Amendment right before his arrest cannot be used against him.  *See Doggett*, 505 U.S. at 654

(finding that defendant could "not be taxed for invoking his speedy trial right only after his arrest."); *see also United States v. Mundt*, 29 F.3d 233, 236 (6th Cir. 1994) (noting that the defendant was unaware of the indictment until the day of his arrest so his failure to assert the right prior to his arrest cannot be held against him).

Accordingly, this factor weighs in favor of Defendant.

## D. Prejudice

The fourth and final factor to consider is prejudice to a defendant.  In *Doggett*, the Supreme Court made clear that "affirmative proof of particularized prejudice is not essential to every speedy trial claim."  *Doggett*, 505 U.S. at 655. This is because "excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify."  *Id.*

Consideration of the prejudice factor "should be assessed in the light of the interests of the defendants which the speedy trial right was designed to protect." *Barker*, 407 U.S. at 532.  Those interests are: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern associated with being under prosecution; and (iii) to limit the possibility that the defense will be impaired.  *Id.* The first two concerns are inapplicable to the Defendant, as he was presumably unaware of the governments indictment or investigation, and was never incarcerated before his arrest.  However, the Supreme Court has noted that the last

interest is most important, because "the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Id.*

When the Government has been found to be negligent in its pursuit of a defendant, the need to prove prejudice diminishes as the delay increases, and the burden is on the *government* to rebut a presumption of prejudice. *United States v. Brown*, 169 F.3d 344 (6th Cir. 1999) (citing *Doggett*, 505 U.S. at 657.) Indeed, as the Sixth Circuit articulated in *United States v. Mundt*, the Government's negligence is not "automatically tolerable simply because the accused cannot demonstrate exactly how [the delay] has prejudiced him." 29 F.3d 233, 236–37 (6th Cir.1994).

Here, the Government relies on *United States v. White*, 985 F.2d 271, 276 (1993) to suggest that the fourth *Barker* factor weighs against Defendant because he cannot show substantial prejudice. However, this is not necessary, as a showing of substantial prejudice is only required if the Government uses *reasonable diligence* in its pursuit. *See United States v. Young*, 657 F.3d 408 (6th Cir. 2011) ("Because the district court determined, as a factual matter, that the government was diligent in its prosecution, [Defendant] must show specific prejudice to his defense. [W]e have found that specific prejudice must be "substantial prejudice" for a defendant to prevail on a speedy-trial claim."); *see also Schreane*, 331 F.3d 548, 559 (noting that if "the government prosecutes a case with reasonable

diligence, a defendant who cannot demonstrate how his defense was prejudiced with specificity will not make out a speedy trial claim no matter how great the ensuing delay, but "when there is evidence of negligence on the government's part, but no bad faith, judicial "toleration of such negligence varies inversely with its protractedness.")

As discussed above, the Court finds that the Government was negligent in its pursuit and failed to exercise reasonable diligence. The Government also cites unreported, non-controlling authority to suggest that prejudice is unlikely where a case "will be tried almost exclusively on documents in the Government's possession." ECF No. 25, PageID.250-51 (citing *United States v. Wanigasinghe*, 2007 WL 3254706 (W.D. Wis. Nov. 2, 2007), aff'd, 545 F.3d 595 (7th Cir. 2008). The Court does not find this argument persuasive. Given the extraordinary, nearly six-year delay in this case, [5] combined with the fact that the delay was attributable to the Government's negligence in pursuing the indictment, the Court finds that the Government failed to rebut the presumption that its delay did not prejudice the Defendant.

This factor weighs in Defendant's favor.

---

[5] The total delay is as much as seven years if one counts from the date of the criminal complaint. (*See* ECF No. 25, PageID.238.)

### III.   CONCLUSION

After balancing the four *Barker* factors, the Court finds that the indictment against Defendant Afolayan must be dismissed on grounds that he has been denied a speedy trial.  There is sufficient proof that the delay is excessively long, that the Government is to blame for the delay, that Defendant asserted his right to a speedy trial, and that he suffered prejudice as a result of the delay.

For the foregoing reasons, **IT IS ORDERED** that Defendant's Motion to Dismiss Indictment is **GRANTED**.  (ECF No. 21.)

s/ Linda V. Parker
LINDA  V. PARKER
U.S. DISTRICT JUDGE

Dated: May 18, 2026